UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER F.,

                                        Plaintiff,

v.                                                              5:20-CV-1003
                                                                   (ML)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

PETER F.
 *Plaintiff, Pro Se*

U.S. SOCIAL SECURITY ADMIN.              NICOLE SONIA, ESQ.
 *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**MIROSLAV LOVRIC**, United States Magistrate Judge


**<u>MEMORANDUM-DECISION AND ORDER</u>**

        Plaintiff Peter F. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his application for Supplemental Security Income ("SSI").  (Dkt. No.

1.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth

the procedures to be followed when appealing a denial of Social Security benefits.  Currently

before the Court is Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 31.)  Plaintiff

has not filed written opposition to this motion, but filed a letter to the court indicating his belief

that he is disabled under the Social Security Act.  (Dkt. No. 20.)  For the reasons set forth below, the Commissioner's motion is granted.

## I.    PROCEDURAL HISTORY

On October 24, 2016, Plaintiff filed an application for SSI, alleging disability dating from January 1, 2013.  (Administrative Transcript ("T.") 188-193).  His application was denied initially on January 23, 2017.  (T. 50-63).  Plaintiff then requested a hearing, where he and vocational expert ("VE") David Van Winkle testified on June 18, 2019 before Administrative Law Judge ("ALJ") Yvette Diamond.  (T. 1141-1189).  At the hearing, Plaintiff amended his alleged onset date to October 24, 2016.  (T. 1144.)  The ALJ issued an unfavorable decision on August 29, 2019.  (T. 7-26).  This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on July 1, 2020.  (T. 1-6).

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the

2

court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

B.      Standard for Benefits[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments;  (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;  (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.   FACTS

As of the date of the ALJ's decision, Plaintiff was 47 years old.  (T. 188, 1148.)  Plaintiff

reported that he attended special education classes while in school, but left before completing the

ninth grade.  (T. 783, 1150.)  He had recently worked with a reading tutor as he prepared for the

GED exam.  (T. 1150-1151.)  He has a limited work history that includes jobs as a janitor,

construction laborer, and stock clerk.  (T. 273, 1152-1154.)

Plaintiff has suffered from neck and back pain for a number of years, with the condition

becoming worse after a fall in 2015.  (T. 788.)  He was considered a candidate for spinal fusion

surgery in 2016, but the procedure was delayed when Plaintiff required double bypass surgery

after his physicians discovered severe coronary artery disease.  (T. 473-477, 788.)  Following

recovery and rehabilitation, Plaintiff continued to receive cardiac monitoring and treatment,

including an angioplasty in June 2018. (T, 882.)  Plaintiff had not undergone spinal surgery as of

the date of the ALJ's decision.  (T. 1115.)

With regard to activities of daily living, Plaintiff reported that the continued neck and

back pain made it difficult to walk outside his home without use of a cane, forced him to

regularly alternate positions from sitting and standing, and made him dependent on his fiancé for

assistance with activities of daily living such as dressing and showering.  (T. 785, 788, 1158-

1160.)  He reported continued difficulties with reading and math but testified that he tried to read

on a daily basis and regularly used a computer to view photos from family and follow professional auto racing . (T, 1167-1168.).

The record includes Plaintiff's treatment history for these and other impairments. Rather than summarizing the records at the outset, I will refer to the pertinent records during my evaluation of the ALJ's disability determination.

## IV.   <u>THE ALJ'S DECISION</u>

After finding that Plaintiff did not engage in substantial gainful activity ("SGA") after the amended alleged onset date of October 24, 2016, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease; coronary artery disease; status-post coronary bypass graft and stenting; obstructive airway disease; gastroesophageal reflux disease (GERD); esophagitis and diabetes mellitus." (T. 13.) The ALJ also found that Plaintiff's borderline intellectual functioning was a non-severe impairment due to the lack of medical evidence showing that it had more than a minimal effect on Plaintiff's ability to do basic work activities. (*Id.*)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment. (T. 13-15.) This analysis included a review of the Listing criteria relevant to back impairments, obstructive airways disease, cardiovascular impairments, gastrointestinal impairments, and diabetes mellitus. (T. 14-15.)

At step four, the ALJ found that Plaintiff could perform less than the full range of light work. (T. 15-18.) Specifically, the ALJ found that Plaintiff could

lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six of eight hours; and sit for six of eight hours. The claimant can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, but cannot

climb ladders.  He can occasionally reach, handle, finger and feel with the non-dominant left upper extremity, and can frequently reach, handle, finger and feel with the dominant right upper extremity.  The claimant can occasionally reach overhead and below the knees.  He requires the option to stand or walk for thirty to sixty minutes and then sit for thirty to sixty minutes as needed throughout the day while remaining on task.  The claimant cannot have any exposure to respiratory irritants.  He reads at a fourth grade level.  The claimant can perform simple, routine tasks.

(T. 15.)

Although the ALJ had not found any severe mental limitations at step two, she incorporated some intellectual limitations into her RFC determination in light of Plaintiff's hearing testimony regarding learning difficulties.  (T. 13.)  In making the RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p.  (T. 15.)  The ALJ further stated that she considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 416.927.  (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations raised during the hearing and in the overall administrative record and found them "not entirely consistent with the medical evidence and other evidence in the record."  (T. 16.)

At step four, the ALJ  found that Plaintiff is unable to perform his past relevant work. (T. 18.)  Relying on the VE testimony, the ALJ next found that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform, such as parking attendant.  (T. 19.)   Accordingly, the ALJ found that Plaintiff was not disabled from his SSI application date of October 24, 2016 through the date of her decision.  (T. 20.)

## V.   <u>ISSUES IN CONTENTION</u>

Defendant, the only moving party, argues that the ALJ's sequential analysis and her ultimate determination of disability was supported by substantial evidence.  Dkt. No. 31 at 3-13.

Plaintiff was represented by counsel during the administrative process and at the outset of this judicial proceeding.  (Dkt. No. 1.)  On February 2, 2021, the attorney representing Plaintiff was suspended from the practice of law before the Northern District of New York pursuant to Rule 83.3 of the Local Rules of this court.  (Dkt. Nos. 8, 13.)  Plaintiff has been advised of his attorney's withdrawal as counsel and the need to either obtain substitute counsel or proceed pro se.  (Dkt. No. 15, 16.)  No substitute counsel has appeared in this matter, and Plaintiff has indicated his intent to proceed in this matter pro se.  (Dkt. No. 14, 20.)

Plaintiff did not file a brief or other papers responsive to defendant's motion, despite being given more than one opportunity to do so and being advised on the potential consequences of failing to file a brief.  (Dkt. Nos. 19, 21, 22, 23.)  It is well settled that a plaintiff bears the burden of establishing disability.  *See Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir.1999); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 642 (2d Cir.1983).  In the Northern District of New York, General Order No. 18 notifies parties of the consequences of failing to file a brief in connection with a social security action: "A party's brief may be its only opportunity to set forth arguments that entitle the party to a judgment in its favor.  The failure to file a brief by either party may result in the consideration of the record without the benefit of the party's arguments."  N.D.N.Y. General Order No. 18 at 6.  This court reminded Plaintiff of these potential consequences when it *sua sponte* extended Plaintiff's deadline to file a brief several times.  (Dkt. Nos. 21, 22, 23.)

"In a case such as this, where Plaintiff is proceeding pro se, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for pro se litigants." *Hubbard v. Comm'r of Soc. Sec.*, No. 6:14-CV-1401 (GTS/WBC), 2016 WL 551783, at *4 (N.D.N.Y. Jan. 14, 2016). As such, even when a plaintiff declines to file a brief, a court may "examine[ ] the record to determine whether the ALJ applied the correct legal standard and reached a decision based on substantial evidence." *Id.* (citing *Gregorka v. Comm'r of Soc. Sec.*, No. 6:13-CV-1408 (GTS/TWD), 2015 WL 3915959, at *4 (N.D.N.Y. June 25, 2015)). This court will do so in this case.

## VI.   SEVERE IMPAIRMENT

### A.   Legal Standards

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Rhondalee T. v. Berryhill*, No. 3:17-CV-1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

9

"Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin.*, No. 5:18-CV-627 (GLS), 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985). However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work, will not be considered severe. *Id*. The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id*.

The step two analysis "may do no more than screen out *de minimis* claims." *Vogt on behalf of Vogt v. Comm'r of Soc. Sec.*, No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Dixon*, 54 F.3d at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued

with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)).  This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.  20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

## B.   Application

Here, the ALJ found Plaintiff's degenerative disc disease, coronary artery disease, status post-coronary bypass graft and stenting, obstructive airway disease, GERD, esophagitis and diabetes mellitus to be severe impairments.  (T. 12.)  The ALJ also considered plaintiff's mental impairments, but concluded that these did not rise to the level of severe impairments because there was not substantial evidence that these additional impairments "caused more than minimal work-related limitations for at least 12 consecutive months" during the relevant time period.  (T. 13.)  In doing so, the ALJ relied upon the December 16, 2016 consultative psychiatric opinion of Dr. Dennis Noia, who opined that Plaintiff had no more than mild psychiatric symptoms and Plaintiff's limited mental health treatment record.  (T. 783, 786.)

Accordingly, the ALJ's analysis at step two provides sufficient explanation indicating that she adequately considered the evidence related to Plaintiff's alleged impairments, including those she did not find to be severe. T. 14-15.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir, 2013); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013).  Therefore, the ALJ had substantial evidence to support her conclusions at step two.  In the alternative, the Court finds that any error by the ALJ at this step would be harmless because she did find other

impairments severe, continued with the sequential evaluation, and provided adequate explanation

in her decision showing she properly considered the evidence related to Plaintiff's various

impairments.  *Id.*  Indeed, the ALJ incorporated some intellectual limitations into the RFC

determination to account for Plaintiff's educational history and his presentation at the

administrative hearing, even though she found no severe mental impairments at step two.  (T. 13,

15.)

Therefore, for the reasons above, the ALJ's findings regarding Plaintiff's impairments at

Step Two are supported by substantial evidence, and remand is not required on this basis.

## VII.    **Listings Analysis**

Plaintiff has the burden of proof at step three to show that his impairments meet or

medically equal a Listing."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009)

(citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing,

Plaintiff must show that [his] medically determinable impairment satisfies all of the specified

criteria in a Listing."  *Rockwood*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)).  "If a

claimant's impairment 'manifests only some of those criteria, no matter how severely,' such

impairment does not qualify."  *Id.*, 614 F. Supp. 2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S.

521, 530 (1990)).  Additionally, a court may uphold an ALJ's finding that a claimant does not

meet a Listing even where the decision lacks an express rationale for that finding if the

determination is supported by substantial evidence.  *Id.*, 614 F. Supp. 2d at 273 (citing *Berry*,

675 F.2d at 468).

Here, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment, considering in

particular Listing 1.04 (spinal disorders), Listing 3.02 (chronic respiratory disorders), Listing

4.04 (ischemic heart disease), Listing 5.06 (inflammatory bowel disease), and  Listing 9.00

(endocrine disorders).  (T. 13-15).

Before conducting her own step three analysis, the ALJ noted that no treating or

examining physician found Plaintiff's impairments equivalent to any Listing.  (T. 14.)  The ALJ

then reviewed the relevant Listings.  First, the ALJ found that Plaintiff did not satisfy the criteria

of Listing 1.04. *(Id.*)  This Listing encompasses spinal disorders resulting in compromise of the

nerve root or spinal cord, with:

> A. Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower back, positive straight-leg
> raising test (sitting and supine);or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of
> tissue biopsy, or by appropriate medically acceptable imaging, manifested by
> severe burning or painful dysesthesia, resulting in the need for changes in position
> or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication[2], established by
> findings on appropriate medically acceptable imaging, manifested by chronic
> nonradicular pain and weakness, and resulting in inability to ambulate
> effectively...

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.   The ALJ reviewed Plaintiff's medical records,

including imaging reports showing some progression of his degenerative disc disease,  and found

no evidence that Plaintiff's spinal impairments included any of the symptoms set out in

---

[2] Pseudoclaudication is a neurological condition causing leg pain as a result of pressure
on the nerve roots from a narrowing of the spinal canal in the lower back.
https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/expert-
answers/pseudoclaudication/faq-20057779?_ga=2.21813371.153651759.1614609238-
232189668.1614609238

paragraphs (A) through (C).  (T. 14, 17-18, 888-889, 894, 1042, 1104-1105, 1112-1113, 1123-1124.)

In assessing whether Plaintiff met Listing 3.03, the ALJ properly considered the pulmonary function testing results in the record.  Pulmonary function testing typically measures FEV1 (forced expiratory volume in one second) and FVC (forced vital capacity), which can establish chronic pulmonary insufficiency under listing 3.02(A) or (B), as well as PCO2 and PO2, which can establish "chronic impairment of gas exchange due to clinically documented pulmonary disease" under listing 3.02(C)(2) or (3).  *See Rivera v. Comm'r of Soc. Sec.,* 728 F. Supp.2d 297, 329 (S.D.N.Y. 2010) (summarizing 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02). This listing may also be met when an individual has experienced exacerbations or complications of their chronic respiratory condition requiring three hospitalizations within a 12-month period and at least 30 days apart.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02(D).  In this case, the ALJ found that Plaintiff's pulmonary testing records did not meet the necessary criteria, and that the record did not show repeated hospitalizations for Plaintiff's diagnosed obstructive airways disease.  (T. 14, 756, 800-803.)

Ischemic heart disease qualifies as a Listed Impairment if it results in certain signs and symptoms.  The ALJ identified these symptoms and found no evidence in the record of

> ischemic changes, such as depression of the ST segment of at least -.10 millivolts, .1 millivolt of ST elevation in non-infarct leads, a decrease of systolic pressure by 10 mm Hg or more below baseline despite increasing workload, or documented ischemia on medically acceptable imaging, occurring at a workload of 5 METs or less on an exercise tolerance test.

(T. 14.)  The ALJ continued comparing Plaintiff's cardiology records with the Listing criteria and found no evidence of "three ischemic episodes requiring revascularization or not amenable to revascularization within a 12-month period."  (*Id.*)  Listing 4.04 can also be met upon a

showing that coronary artery disease presents a significant risk to Plaintiff as evidenced by the

level of arterial obstruction or "very serious limitations in the ability to independently initiate,

sustain, or complete activities of daily living."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing

4.04(C)(2).  The ALJ reviewed Plaintiff's cardiology records and his activities of daily living and

found neither satisfied the Listing criteria.  (T. 14.)

The ALJ also considered Listing 5.06, in light of Plaintiff's diagnosed inflammatory

bowel disease.  (*Id.*)  She found that Plaintiff did  not satisfy the Listing because his condition

did not result in obstructions of the small intestine or colon, severe anemia, serum albumin levels

of 3.0g/dl, clinically documented tender abdominal mass palpable on physical examination with

abdominal pain or cramping, perineal disease with a draining abscess or fistula, involuntary

weight loss, or a need for supplementary daily enteral nutrition.  (T. 14-15.)

To qualify under Listing 9.00(b)(5), diabetes mellitus must result in long term

complications such as diabetic ketoacidosis, chronic hyperglycemia, or hypoglycemia.  20 C.F.R.

Pt. 404, Subpt. P, App. 1, Listing 9.05(b)(5).  In addition, the ALJ in this case appropriately

considered a number of Listings potentially applicable to diabetes-related complications.  *See*

*Melo v. Berryhill*, No. 17 Civ. 4716 (AJP), 2018 WL 847011, at *19 (S.D.N.Y. Feb. 13, 2018)

(recognizing that potential complications associated with diabetes mellitus should be considered,

including Listing 11.00 (Neuropathy)).  Specifically, the ALJ considered potential vision

problems under Listings 2.02, 2.03, and 2.04, kidney issues under Listings 6.05, 6.06, and 6.09,

and neuropathy under Listing 11.14.  (T. 15.)

In her review of the record, the ALJ found treatment notes showing Plaintiff's blood

glucose levels relatively well-controlled with diabetes medication.  (T. 15, 1065-1066, 1071,

1077.)  The ALJ also relied upon physician notes showing normal dermatological,

ophthalmological and podiatric function to conclude that diabetic complications did not currently impose any functional limitations.  (T. 15, 790, 1065-1066, 1071.)  Therefore, the ALJ had substantial evidence to conclude that Plaintiff's diabetes did not satisfy any Listing.

The ALJ's thorough analysis of Plaintiff's impairments at Step Three indicate sufficient consideration of his impairments in relation to the Listings, and her findings are supported by substantial evidence. As such, remand is not required on this basis.

## VIII.   RFC Determination

RFC is defined as "'what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work ... must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting S.S.R. 85-15, 1985 WL 56857, at *6).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole,' even if that

16

finding does not perfectly correspond with any of the opinions of cited medical sources." *Tanya S. v. Saul*, 410 F. Supp. 3d 436, 445 (N.D.N.Y. 2019) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). However, it is well established that ALJs are not medical professionals; therefore, ALJs are "not qualified to assess a claimant's RFC on the basis of bare medical findings." *Id.* (internal quotation marks and citation omitted); *see Charland v. Comm'r of Soc. Sec.*, No. 1:13-CV-492 (GTS/WBC), 2016 WL 1117515, at *2 (N.D.N.Y. Mar. 22, 2016) ("[A]n ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence."). "In other words, there must be substantial evidence to support a finding of functional limitation(s) or lack thereof." *Tanya*, 410 F. Supp. 3d at 445.

"Before assessing the claimant's RFC, the ALJ must consider the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (citing S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). This requires the ALJ to "make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch." *Walters v. Astrue*, No. 11-CV-640 (VEB), 2013 WL 598331, at *3 (N.D.N.Y. Feb. 15, 2013); 20 C.F.R. §§ 404.1513a(2)(i), 404.1569a(a). "The claimant's RFC can be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy only after the function-by-function analysis has been completed." *Knighton*, 861 F. Supp. 2d at 66 (citation omitted); *see Walters*, 2013 WL 598331, at *3 ("Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, e.g., sedentary, light, medium, heavy, and very heavy.").

"Light work" is ordinarily defined as work that

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

As stated above, the ALJ determined that plaintiff had the RFC to perform less than the full range of light work, with certain other restrictions including a limitation to lift and carry twenty pounds occasionally and ten pounds frequently; occasionally reach overhead and below the knees; and the option to stand or walk for up to an hour and then sit for up to an  hour throughout the day while remaining on task. (T. 15.)  The ALJ also found Plaintiff is limited to performance of simple, routine tasks. (*Id.*)

In calculating plaintiff's RFC, the ALJ evaluated the December 16, 2016 consultative medical opinion prepared by Dr. Kaylani Ganesh, along with plaintiff's medical records and his hearing testimony.  Prior to his December 2016 examination by Dr. Ganesh, Plaintiff reported neck and back pain dating back several years, that worsened after a 2015 injury.  (T. 788.)  He also explained to the consultative examiner that spinal surgery had been delayed because he had to undergo double bypass surgery in June 2016.  (*Id.*)  Dr. Ganesh observed that Plaintiff did not appear in any acute distress, but did have difficulty completing certain portions of the examination, such as laying flat on the examination table.  (T. 789-790.)

During the examination, Plaintiff demonstrated a normal gait, but used a cane and could not walk on his heels or toes.  (T. 790.)  Plaintiff did not require assistance changing for the examination, getting on or off the examination table, or rising from a chair.  (*Id.*)  Dr. Ganesh

found normal lung function and regular heart rhythm.  (*Id.*)  Upon examination, Plaintiff's cervical spine showed full flexion, but reduced extension, lateral flexion, and rotation.  (*Id.*)  His lumbar spine likewise had reduced flexion, extension, lateral flexion, and rotation. (T. 791.) Plaintiff demonstrated full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally, with full strength in his upper and lower extremities.  (*Id.*)  His hand and finger dexterity were intact, with full grip strength in both hands despite the missing finger on his left hand.  (*Id.*)

Based on her examination, Dr. Ganesh opined that Plaintiff had no gross limitations to sitting, standing, or walking.  (*Id.*)  She also opined that Plaintiff had "severe" limitations to lifting, carrying, pushing, and pulling "at this time."  (*Id.*)  The ALJ reviewed Dr. Ganesh's opinion and assigned it "partial weight" because she found the longitudinal record to support greater limitations with regard to sitting and standing, and lesser restrictions with regard to lifting, carrying, pushing, and pulling.  (T. 18.)

As an initial matter, "there is no requirement that the ALJ pick one RFC [opinion] and use that particular evaluation in its entirety."  *Alexandrea R.R. v. Berryhill*, No. 15-CV-756 (FPG), 2019 WL 2269854, at *6 (N.D.N.Y. May 28, 2019).  Rather, "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment."  *Id.*  In addition, an ALJ may consider relevant regular daily activities in his evaluation of a consultative examiner's report that is based on a single examination.  *See George A. v. Comm'r of Soc. Sec.*, No. 20-CV-691 (MJR), 2021 WL 2102527, at * (W.D.N.Y. May 25, 2021) (rejecting consultative opinion that plaintiff had moderate to marked limitations for repetitive twisting and bending of the cervical spine as inconsistent with plaintiff's report that he regularly drove a car).

In this case, the ALJ's explanation provides substantial evidence to support her decision to discount portions of Dr. Ganesh's opinion.  The ALJ explained that she rejected Dr. Ganesh's opinion that Plaintiff had no limitations regarding sitting, standing, and walking based upon Plaintiff's treatment records showing impaired gait, the need for a cane, and limited spinal range of motion, similar to Plaintiff's presentation at the consultative examination.  (T. 18, 790, 1042, 1050, 1090.)  The ALJ also adopted Plaintiff's hearing testimony that he required a cane when walking outside his home and needed to regularly shift positions from sitting to stand due to back and neck pain.  (T. 1158, 1169.)  In rejecting Dr. Ganesh's opinion regarding undefined "severe" limitations on lifting and carrying, the ALJ relied upon Plaintiff's treatment history showing no severe strength deficits, and Dr. Ganesh's own examination report regarding Plaintiff's ability to use his upper and lower extremities. (T. 18, 791.)

In addition, the ALJ devoted considerable time in her opinion to discussing Plaintiff's cardiovascular, pulmonary, gastrointestinal and diabetic treatment history and any related functional limitations.  (T. 16, 474, 757, 803, 871, 882-883, 929-930, 995, 1077-1078.)  Much of that discussion is included in this court's review of the Listings Analysis, above.  The ALJ also reviewed imaging and examination reports related to Plaintiff's spinal impairments, including documentation that spinal surgery, first scheduled for 2017, had been delayed due to his heart disease and diabetes.  (T. 16-17, 478, 788, 882, 888-889, 1104-1105, 1113, 1116.)  At his hearing, Plaintiff's then-counsel indicated that the spinal surgery could be scheduled imminently, and the ALJ held the administrative record open for more than three weeks to allow for submittal of  additional medical records.  (T. 1145-1147, 1174, 1187-1189.)  Before the record closed, Plaintiff informed the ALJ that his spinal surgery was scheduled for October 2019 but provided no additional treatment notes or examination reports.  (T. 1115-1118.).  After the administrative

record closed, Plaintiff provided the Appeals Council additional cardiology records from June

2019, which predated the administrative hearing, but no material related to his spinal surgery.

(T. 1-6, 32-38, 1116 .)  Plaintiff did not file any new evidence with this court.

The ALJ did not discuss Dr. Noia's consultative psychiatric opinion as part of her RFC

determination, but had previously found it consistent with the limited overall mental health

treatment record..  (T. 13.)  Plaintiff was prescribed anti-depressant medication by his primary

care provider but has no record of psychiatric hospitalization or outpatient psychiatric treatment.

(T. 783.)  Despite this minimal treatment record, the ALJ credited Plaintiff's own testimony

regarding his learning difficulties, and limited him to simple, routine work tasks.  (T. 15, 783,

1150-1151, 1172.)

It is the province of the ALJ to resolve genuine conflicts in the record.  _Veino v._

_Barnhart_, 312 F.3d 578, 588 (2d Cir. 2002).  However, the Commissioner need not "reconcile

explicitly every shred of medical testimony."  _Galiotti v. Astrue_, 266 F. App'x 66, 67 (2d Cir.

2008) (citing _Fiorello v. Heckler_, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved

conflicts between the objective medical record, medical opinion evidence, and hearing testimony

by placing the greatest reliance on that evidence that she deemed most consistent with plaintiff's

overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the

conflicting medical evidence and plaintiff's testimony, and made an RFC finding that was

consistent with the overall record.  _See Matta_, 508 F. App'x. at 56 (although ALJ's conclusion

did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to

weigh all of the evidence available to make an RFC finding that was consistent with the record

as a whole).  In light of the ALJ's analysis, this court concludes that her RFC determination was

supported by substantial evidence, as summarized above.  Therefore, this court will not disturb

the ALJ's RFC determination.  *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t

is not the function of the reviewing court to reweigh the evidence.") (<u>citing</u> *Carroll v. Sec'y of*

*Health and Human Servs*., 705 F.2d 638, 642 (2d Cir. 1983)).

## IX.     Step Five

At step five, the burden shifts to the Commissioner "to show there is other work that [the

claimant] can perform."  *McIntyre*, 758 F.3d at 150 (quoting *Brault*., 683 F.3d at 445).  "If a

claimant has non-exertional limitations that 'significantly limit the range of work permitted by

his exertional limitations,' the ALJ is required to consult with a vocational expert."  *Zabala v.*

*Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.

1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a

hypothetical question incorporating Plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d

107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of

work as long as the hypothetical facts the expert is asked to consider are based on substantial

evidence and accurately reflect Plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274,

276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is

supported by substantial facts, the hypothetical is proper.  *Id.* at 276-77.

VE Van Winkle's hearing testimony included a response to a hypothetical question based

upon plaintiff's RFC.  (T. 1175-1187.)  Because this court has found the ALJ's RFC

determination was supported by substantial evidence, it also finds the ALJ's hypothetical to VE

Van Winkle was proper, and her step five determination was supported by substantial evidence.

Based on the foregoing, the ALJ's decision was based upon correct legal standards, and

substantial evidence supports her ultimate determination Plaintiff was not under a disability

within the meaning of the SSA.  20 C.F.R. § 404.1520(g).

      **ACCORDINGLY**, it is

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 31) is

**GRANTED**; and it is further

      **ORDERED** that the Commissioner's decision is **AFFIRMED;** and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED;** and it is further

      **ORDERED** that the Clerk of the Court shall serve copies of this Memorandum- Decision

and Order on the parties; and it is further

      **ORDERED** that the Clerk of the Court shall provide petitioner with copies of the

unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v.*

*Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).


Dated:  May 12, 2022
      Binghamton, New York


Miroslav Lovric
U.S. Magistrate Judge